AJAX COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7476.    Promulgated June 14, 1927.

PAID-IN SURPLUS.—Cash value of coal-land lease at the time acquired by the taxpayer corporation determined and allowed as paid-in surplus and subject to exhaustion in the proportion that the number of tons mined each year bears to total content of recoverable merchantable coal.

*John T. Metcalf, Esq.,* for the petitioner.
*A. George Bouchard, Esq.,* for the respondent.

The petitioner complains of a deficiency in income and profits taxes for the year 1920 in the amount of $2,723.29, resulting from (1) the rejection by the Commissioner of a claimed paid-in surplus and (2) the disallowance of a deduction for the exhaustion of the capital value of a coal-land leasehold.

The record contains the testimony of the general manager of the petitioner corporation; an experienced coal-mine operator, owning and operating a lease adjoining the petitioner's property; and an experienced coal-mining engineer; all of whom gave opinion evidence as to the cash value of the petitioner's lease of coal lands at the time it was acquired. The record also contains the testimony of a person who, acting on behalf of himself and others, in the month of May, 1920, offered to purchase the petitioner's coal-land lease, together with the improvements then made and in process of completion, and to pay therefor the sum of $200,000, and that he again renewed such offer in the month of June, 1920.

### FINDINGS OF FACT.

During the year 1918 George P. Fitz, J. C. Jones, and B. W. Whitfield, began negotiations with the Kentucky River Coal Corporation with the view of acquiring a lease of approximately 1,000 acres of coal-bearing lands in Perry County, Kentucky. The Kentucky River Coal Corporation offered to give to said parties a lease of the No. 4 seam coal underlying said lands on a royalty basis of 10 cents per ton of merchantable coal, and an agreement, partly oral and partly evidenced by letters passing between the parties, for a lease of such coal properties was then made.

At this time, in 1918, the Louisville & Nashville R. R. was building what was known as Lots Creek Extension, and. Messrs. Fitz, Jones, and Whitfield, after securing the agreement for the lease began negotiating with the Louisville & Nashville R. R. for spur track and siding facilities. These negotiations resulted successfully, thus making it practicable to mine and ship coal from the tract of land leased.

In August, 1919, Fitz, Jones, and Whitfield associated with themselves T. C. Berger and T. J. Metcalf, and organized a corporation known as the Ajax Coal Co., with an authorized capital stock of $100,000. Of this capital stock, $52,000 was immediately taken by the said incorporators and paid for in cash. Thereafter, the same incorporators subscribed for more stock at par, and paid for the same in cash, and began making the necessary preparations for operating a coal-mining business upon the tract leased.

On the first day of May, 1920, the agreement for a lease acquired by Fitz, Jones, and Whitfield was carried out by the execution and delivery of a formal lease made by the Kentucky River Coal Corporation, lessor, to the Ajax Coal Co. as lessee, on a royalty basis of 10 cents per ton. During the year 1920, and following the completion of the Louisville & Nashville R. R. Lots Creek Extension, the Kentucky River Coal Corporation leased an adjoining smaller tract of the same vein of coal on a royalty basis of 15 cents per ton.

On the 7th day of May, 1920, one C. B. Rose, acting for himself and others, entered into a contract with Berger, Fitz, and Metcalf for the purchase of all of the capital stock of the Ajax Coal Co., and to pay therefor the sum of $200,000 on or before the 7th day of June, 1920. On that day Rose and his associates were not ready to complete and carry out their agreement to purchase and asked for an extension of time which was declined for the reason that those stockholders of the Ajax Coal Co. who had not signed the agreement hesitated to sell at the price named. A few days later Rose and his associates were ready with the sum of $200,000 to purchase the stock of the Ajax Coal Co. and renewed their offer. At this time the Ajax Coal Co. had expended, in its preparation for carrying on mining operations, approximately $67,000, and those stockholders who entered into the agreement of sale to Rose agreed that additional improvements and equipment should be acquired, making the total cost of the same $90,000. When the Ajax Coal Co. opened up its books of account it entered thereon its coal land lease as an asset at a valuation of $80,000. The amount of recoverable merchantable coal underlying the tract was approximately four million tons. The petitioner's leasehold, when acquired, had a cash value of $80,000, and the said leasehold property was a part of the contributions made by the stockholders to the paid-in capital and surplus of the petitioner corporation.

OPINION.

TRUSSELL: The lease here under consideration conveyed to the lessee the exclusive use for such term of years as might be required for the mining and removal of a vein of coal, estimated to contain approximately four million tons. The lease created an interest and an estate in land separated from the fee. An interest or an estate in land is something of value the moment it is created unless, perchance, the conditions are of such an unfavorable character as to destroy the otherwise presumed value of the exclusive use of land for a period of years.

The testimony in this case all tends to prove that the conditions under which this lease was acquired were favorable to the lessee; that such conditions were more favorable than the conditions of other leases in the same territory as evidenced by the fact that the royalty paid under the lease here in question was 10 cents per ton while a lessee of an adjoining tract paid 15 cents per ton. The directors of the lessee corporation in the exercise of their judgment placed the present value of this lease made in May, 1920, at $80,000. Two other witnesses, one of whom was an experienced coal-mining operator and the other an experienced coal-mining engineer, both of

whom were thoroughly familiar with coal-mining conditions in the territory surrounding the land covered by the petitioner's lease, agreed that the present value of petitioner's lease was at least $80,000. Another witness testified that he and his associates offered to purchase this lease in May, 1920, at a valuation of not less than $100,000, and that he renewed this offer again in June of the same year when the offer was rejected by the petitioner. We are, therefore, of the opinion that the record of this case must be taken to establish that at the time this lease was made and delivered to the petitioner corporation it had a then present value of $80,000, and at that value it was contributed to the petitioner corporation by its stockholders as a part of the paid-in capital and surplus of the petitioner, and that the lease must, therefore, be reflected in petitioner's invested capital at the initial valuation of $80,000 and be subject to exhaustion from year to year in the proportion that the number of tons of coal mined each year is to the total coal content of the tract.

> *The deficiency may be recomputed in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*